**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIA O. SOLTERO DE RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 14-05765-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**INTRODUCTION**

Maria O. Soltero De Rodriguez ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB") following an administrative law judge's ("ALJ") decision that Plaintiff was not disabled. Administrative Record ("AR") 39. For the reasons stated below, the decision of the Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this Order.

/ / /

/ / /

## II.

## PROCEEDINGS BELOW

On January 25, 2011, Plaintiff applied for DIB alleging disability beginning January 8, 2010 (her alleged onset date ("AOD")).[1] AR 29. Plaintiff's claim was denied on May 5, 2011. *Id.* Plaintiff then filed a written request for hearing, which took place on June 13, 2012. *Id.* Plaintiff testified at that hearing, and was represented by counsel. *Id.* An impartial vocational expert ("VE") also testified. *Id.* On July 20, 2012, the ALJ found that Plaintiff was not under a disability, as defined by the Social Security Act,[2] from the AOD through the date of the ALJ's decision. AR 39. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* AR 5–8. Plaintiff filed the instant action in this Court on July 24, 2014. Dkt. No. 1.

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled. 20 C.F.R. §§ 404.1520, 416.920; *see also Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the AOD. AR 31. At **step two**, the ALJ found that the medical evidence established the following severe impairments: lumbosacral and cervical multilevel degenerative disc disease, chronic lumbosacral and cervical sprain/strains, and "depressive disorder not otherwise specified, with anxiety, mild." *Id.* At **step three**, the ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 33.

---

[1] Plaintiff's AOD was September 8, 2010. AR 29. However, Plaintiff, through her attorney, amended that date to January 8, 2010 at the hearing. *Id.*

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

At **step four**, the ALJ found that Plaintiff possessed the residual functional capacity ("RFC") to perform light work, including lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking with normal breaks for a total of six hours in an eight-hour workday, sitting with normal breaks for a total of six hours in an eight-hour workday, occasional performance of postural activities, but no climbing ladders, ropes, or scaffolds. *Id.* Based on the foregoing and on the VE's testimony, the ALJ found Plaintiff could perform her past relevant work as a shirt folding machine operator. *Id.* at 39. Thus, the ALJ did not proceed to **step five**, and instead found that Plaintiff was not disabled. *Id.*

### III.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). Substantial evidence is more than a mere scintilla but less than a preponderance. *Id.* at 459. It is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). Inferences drawn from the record may serve as substantial evidence, but only when *reasonably* drawn. *See Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

To determine whether substantial evidence supports a finding, the Court must consider the record as a whole, weighing evidence that supports *and* detracts from the ALJ's conclusion. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). If evidence can reasonably support either affirming or reversing the ALJ's finding, the reviewing court may not substitute its judgment for that of the ALJ. *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006).

The Court may review only the reasons stated in the ALJ's decision, and may not affirm on a ground on which the ALJ did not rely. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the … nondisability determination.'" *Robbins*, 466 F.3d at 885 (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006)).

## IV.
## DISCUSSION

Plaintiff presents two issues for review: (1) whether the ALJ properly evaluated the credibility of Plaintiff's testimony; and (2) whether the ALJ properly evaluated the opinion of Dr. Oscar Rodriguez, Plaintiff's treating chiropractor. *See* Joint Stipulation ("Joint Stip.") at 4.

**A.** **<u>The ALJ Improperly Discredited Plaintiff's Hearing Testimony</u>**

Once a claimant produces medical evidence of an underlying impairment that is reasonably likely to be the source of the alleged symptoms, claimant's subjective testimony as to their severity must be considered; medical findings are not required. *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991). However, an ALJ may reject a claimant's allegations on finding evidence of malingering or providing "clear and convincing" reasons for so doing. *Benton v. Barnhart,* 331 F.3d 1030, 1040 (9th Cir. 2003).

Here, after "careful consideration of the evidence," the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms;" but found that her statements as to the intensity, persistence and limiting effects of her symptoms were not credible to the extent that they differed from his RFC assessment. AR 34.

The ALJ provided four reasons for his finding: (1) Plaintiff gave inconsistent statements; (2) her activities exceeded her alleged functioning; (3) her pain was under control; and (4) her presentation at the hearing and a field office interview

were not consistent with a person suffering from severe and unrelenting pain. *Id.* at 38-39. No evidence of malingering was cited, and thus his reasons for rejecting Plaintiff's testimony must be "clear and convincing."

### 1. Plaintiff's Statements

The ALJ's first reason for discrediting Plaintiff's statements is that she stated in a February 2011 pain questionnaire that she could stand four hours at a time, but testified on June 13, 2012 that she could only stand for 15 to 20 minutes. AR 102, 182. The ALJ found the discrepancy "troubling" because: (1) "it is not consistent with her [AOD;]" (2) it shows that she was "already quite capable" with treatment; and (3) "the record does not document any significant event after February 2011 … that would account for her dramatically decreased functioning." *Id.* at 38.

The ALJ's first rationale is not convincing because it is unlikely that Plaintiff based her AOD determination solely on her inability to stand for a period of time. Further, four hours is still less than the period of time in the ALJ's RFC assessment, which was used to find that Plaintiff was able to return to her past relevant work.

The ALJ's second rationale is not convincing because although her ability to stand for four hours in February 2011 could have shown that she was "quite capable with treatment" *then*, it does not necessarily show that she remained "quite capable with treatment" as of June 13, 2012, the date on which she testified at the hearing.

The ALJ's third rationale is not convincing because, as is clearly identified in both the objective medical evidence and the ALJ's decision, Plaintiff's medically determinable impairments include lumbosacral and cervical multilevel *degenerative* disc disease. *See* AR 31. Because Plaintiff's condition is degenerative, the Court is not convinced that there needed to be a significant event documented in the record to explain Plaintiff's "dramatically" decreased level of functioning.

### 2. Daily Activities

The ALJ's second reason for discrediting Plaintiff's statements is that her reported activities were "not entirely consistent with her allegations of disability."

5

AR 38. Specifically, Plaintiff reported taking her nephew to school, attending to personal care, cooking simple meals, doing small amounts of dishes slowly, doing laundry every week, driving, and shopping for groceries. *Id.*; *see also id.* at 172-93.

This reason is not "clear and convincing" for two reasons. First, Plaintiff testified that as of the hearing she was no longer able to do most of those activities. Specifically, she testified that she no longer did laundry or took her nephew to school; she only cooked her own food and cleaned her own dishes; and only grocery shopped with her sister, and carried small bags to help her "once in a while." AR 98-100.

Second, none of those activities, nor any other activity that Plaintiff reported or admitted to undertaking, is truly inconsistent with her disability allegations. That Plaintiff has alleged she is constantly in pain does not mean she must be resigned to bed-rest. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (claimants need not vegetate in a dark room to receive benefits); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (claimants need not be "utterly incapacitated" to receive benefits).

### 3. *Plaintiff's Pain Management*

The ALJ's third reason for discrediting Plaintiff's statements is that certain progress notes suggest that her pain was controlled. AR 38. Specifically, the ALJ argues that: (1) Plaintiff's pain was managed with spinal injections, medications,[3] Neuromuscular Stimulator (NMS) and Transcutaneous Electrical Nerve Stimulation (TENS) units; (2) Plaintiff reported walking for exercise and said her tolerance was

---

[3] The ALJ cited to a pain management report completed by Dr. Kohan, Plaintiff's pain disorder specialist, on July 4, 2011 in which Dr. Kohan stated that Plaintiff's medication regimen had "helped her significantly without any type of side effects." AR 38, 359. Just two months later, however, on September 8, 2011, Dr. Kohan noted Plaintiff "ha[d] been told that she has some liver problems which was [*sic*] not seen on her most recent laboratory workup for June." *Id.* at 366; *see also id.* at 462 (noting that she went to see her doctor for a check-up with her liver condition, "which was determined to be inflamed"). The results were mostly normal, but two levels were slightly elevated. *Id.* at 368. Thus, it appears that certain side effects were observed or at least monitored.

increasing; (3) Plaintiff's radiculopathy improved, and was, at times, resolved; (4) Plaintiff had no antalgia and a normal gait; and (5) Plaintiff told Dr. Rodriguez on August 19, 2010 that she was not interested in surgery or pain management. *See id.* at 55, 210, 216, 240, 251, 253, 461, 468, 480-81, 529-30.

The ALJ's first rationale is not convincing for two reasons. First, even if it is conceded that Plaintiff's symptoms were managed with spinal injections, medicine, and her NMS and TENS units, it has not been shown that her pain was controlled to the extent that she would be able to resume her job duties. And the record appears to suggest the contrary. For example, on June 3, 2011, after noting that her lumbar spine symptoms "ha[d] responded to past epidural steroid injections[,]" Dr. Kohan recommended, among other things, that Plaintiff "may continue her current regimen of medication, which has been helping her with her pain and also *enabling her to do some of her activities of daily living.*" AR 357-58 (emphasis added). Her ability to resume certain activities of daily living does not necessarily translate to an ability to resume work activities. And furthermore, the NMS/TENS units she was advised to use on a regular basis, and which afforded her a "significant amount of relief," both appear to be a home remedies—not a pain management option that could be used to assuage her pain symptoms during a normal workday. *See id.* at 38, 357, 366.

Second, the Court is not convinced that Plaintiff's pain management regimen constitutes the type of "conservative treatment" that has been deemed "sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995)). Unlike the conservative "over-the-counter pain medication" in *Parra*, *see id.* at 750-51, the use of narcotic medication in conjunction with other treatments is generally viewed as non-conservative treatment. *Martinez v. Colvin*, 2015 WL 4270021, at \*6 (C.D. Cal. July 13, 2015) (citing *LapierreGutt v. Astrue,* 382 F. App'x 662, 664 (9th Cir. 2010) (treatment consisting of "copious" amounts of narcotics, occipital nerve blocks, and trigger point injections not conservative);

*Christie v. Astrue,* 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with narcotics, steroid injections, trigger point injections, epidural injections, and cervical traction was not conservative)). Here, as detailed above, Plaintiff's pain management plan consisted not only of narcotics and narcotic-like medications, but also epidural steroid injections and regular NMS/TENS usage.

The ALJ's second rationale is also not convincing because Dr. Rodriguez's September 28, 2010 progress report note—that Plaintiff was "walking for exercise almost daily" and stated that her "tolerance to walking appears to be increasing"—provides no context. It is not clear whether Plaintiff was walking 5-10 minutes or 30-45 minutes. Nor is it clear whether her tolerance continued to increase over the nearly two-year period between the date of the note and the hearing, or whether her tolerance decreased thereafter. Finally, the ALJ did not show how periodic walking for exercise may transfer to a work setting. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (rehabilitative efforts—such as walking for an hour—are "not necessarily transferable to the work setting with regard to the impact of pain").

The ALJ's third rationale is not convincing because the fact that Plaintiff's radiculopathy may have improved does not show that it improved to the extent that Plaintiff was able to work. Also, as Plaintiff noted, the ALJ supported his assertion that Plaintiff's radiculopathy at times was resolved with two record citations, from December 16, 2009 and January 27, 2010. Joint Stip. at 25; AR 250-51, 253-54. The first note occurred before the AOD, and the second occurred shortly after the AOD, approximately 30 months before Plaintiff testified at the hearing.

The ALJ's fourth rationale is not convincing because it selectively references portions of the medical evidence. *See Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984) (error for ALJ to ignore or misstate the competent evidence in the record to justify a conclusion); *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"). Simply stating that Plaintiff had no antalgia and a normal

gait improperly ignores the portions of the record that contradict that assertion, and suggest instead that Plaintiff's gait was either antalgic or slightly antalgic. *See, e.g., id.* at 38, 354, 357-59, 362-63, 526.

The ALJ's fifth rationale is supported by an August 19, 2010 progress report by Dr. Rodriguez in which he noting that Plaintiff said that she was not interested in pain management or surgery. AR 481. Even if Plaintiff said she was not interested in pain management on August 19, 2010, the evidence is replete with records of her management regimen, including numerous pain management follow-up reports by Dr. Kohan. *Id.* at 354-68. Further, the cursory reference to Plaintiff's declination of surgical intervention lacks context. It is not clear if Plaintiff was broadly asked if she was interested in surgery or offered a specific procedure.[4] Nor it is clear that surgery would have cured Plaintiff's condition or made it possible for her to return to work. *See Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (rejecting an adverse credibility determination based on the claimant's failure to follow treatment plan where ALJ failed to find the plan would have enabled him to return to work).

### 4. *Plaintiff's Presentation At The Hearing And Field Interview*

The ALJ's final reason for discrediting Plaintiff's statements is based on his observation from the hearing that Plaintiff's appearance was not that of someone in severe, unrelenting pain; and the Social Security Administration staff's observation, in a Disability Report dated January 28, 2011, that Plaintiff had no trouble "hearing, reading, breathing, understanding, coherency, concentration, talking, answering, sitting, standing, walking, seeing, using hands, or writing." *See* AR 38-39, 162-64.

Plaintiff argues that this reason is "the type of 'sit and squirm' jurisprudence" that the Ninth Circuit has disfavored. Joint Stip. at 27 (citing *Perminter v. Heckler*,

---

[4] The Court also notes that Dr. Rodriguez's August 19, 2010 progress report further notes that, at the time of that appointment, Plaintiff had recently undergone major surgery (unrelated to her impairments). AR 481. Thus, Plaintiff may not have been interested in surgery "at [that] time" because of the proximity of the appointment to her prior surgery. *Id.*

9

765 F.2d 870, 872 (9th Cir. 1985). In turn, the Commissioner argues that although the Ninth Circuit has criticized the sit and squirm test in past cases, the "'inclusion of the ALJ's personal observations does not render the decision improper[,]'" *id.* at 31 (citing *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999))—and further argues that such observations are authorized by SSR 96-7p. *Id.* at 31-32.

The Commissioner is correct that the ALJ may consider his observations of a claimant when the claimant attends an administrative proceeding. SSR 96-7p at *5. However, those observations must be part of the *overall evaluation* of a claimant's credibility. *Id.* Here, having already found that the ALJ's three other reasons for discrediting Plaintiff's statements were unpersuasive, the Court would have to find his final reason sufficient to affirm his conclusion. And to rely on that final reason alone *would* violate the sit and squirm test. *See Perminter*, 765 F.2d at 872 (noting that an ALJ's reliance on his personal observations of a claimant at the hearing has been condemned as "sit and squirm" jurisprudence) (citation omitted); *Saunders v. Astrue*, 433 F. App'x 531, 534 (9th Cir. 2011) (stating that personal observations of a claimant's function "cannot form the sole basis for discrediting his testimony").

In sum, the Court concludes that the ALJ's reasons for discrediting Plaintiff's statements as to the intensity, persistence and limiting effects of her symptoms were not clear and convincing. Thus, Plaintiff's statements were improperly discredited.

**B.**     **ALJ's Evaluation of Dr. Rodriguez's Opinion**

The Court declines to consider Plaintiff's second contention at this time since the ALJ's compliance with this Order may moot the issue of whether the opinions of Dr. Rodriguez were improperly accorded "very little weight."

**C.**     **Remand Is Appropriate**

The Court has discretion to decide whether to remand for further proceedings or order an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Under the credit-as-true rule, the court should remand for an award of benefits if three conditions are met: (1) the record is fully developed and further

administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, be it claimant testimony or medical opinion; and (3) if such evidence were credited as true the ALJ would have to find the claimant disabled. *Garrison*, 759 F.3d at 1020.

Here, the first and third conditions are arguably not met. Further proceedings to address Plaintiff's credibility and present physical condition may be beneficial. Further, it is not clear that the ALJ would be required to find Plaintiff disabled were her hearing testimony credited-as-true. Remand is appropriate so that the ALJ may consider whether Plaintiff's testimony affects the RFC assessment to the extent that Plaintiff will now be deemed unable to perform her past relevant work. If so, it will be necessary to proceed to step five of the sequential evaluation process to consider whether Plaintiff could perform work existing in significant numbers in the national economy, or whether a finding that Plaintiff is disabled is merited on this record.

## V.
## CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: September 18, 2015

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

## NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**